IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GLENN WALTERS NURSERY, INC.,                Civil No. 07-74 AA
an Oregon corporation,                      OPINION AND ORDER

          Plaintiff,

     vs.

KENLY FARMS, INC., an
Arizona corporation,

          Defendant.
_____

Michael B. Merchant
Black Helterline LLP
1900 Fox Tower
805 SW Broadway
Portland, OR 97205-3359
     Attorney for Plaintiff


Lawrence A. Wagner
Stewart Sokol & Gray, LLC
2300 SW First Avenue, Suite 200
Portland, OR 97201-5047
     Attorney for Defendant

Page 1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiff brings this action seeking a declaratory judgment in a breach of contract suit, invoking the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Alternatively, defendant moves to transfer this case to the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1406(a). The court held oral argument on March 12, 2007. Defendant's motion to dismiss for lack of personal jurisdiction, as well as defendant's alternative motion to transfer, are denied.

## I. BACKGROUND

The following facts are undisputed. Plaintiff Glenn Walters Nursery, Inc. and defendant Kenly Farms, Inc. work in the commercial nursery business. Plaintiff is an Oregon corporation with its principal place of business in Cornelius, Oregon. Defendant is an Arizona corporation with its principal place of business in Phoenix, Arizona. Defendant does not maintain a place, business, or agent in Oregon. With the exception of its contracts with plaintiff, defendant does not market to Oregon or sell to any company or person located in Oregon.

On or about November 16, 2001, plaintiff entered into a contract with defendant for the purchase and delivery of 50,000 rose plants in December 2003, and January 2004. Pursuant to the

contract, defendant agreed to grow rose bushes for plaintiff, and
plaintiff agreed to pay for and accept delivery of the rose
bushes.

Defendant then entered into a second contract with plaintiff
in 2005, where plaintiff again purchased roses from defendant.
Those rose plants were infected with a downy mildew and plaintiff
sustained losses.  Nevertheless, on January 31, 2006, plaintiff
notified defendant that it would again purchase 100,000 rose
plants in 2006.

On February 13, 2006, plaintiff accepted delivery of 107,480
rose plants.  On or about May 16, 2006, defendant faxed plaintiff
a product availability sheet for its 2007 crop.  Plaintiff
advised defendant that it did not intend to purchase any more
plants from defendant.

Nevertheless, defendant alleges that plaintiff entered into
two more contracts with defendant to purchase rose plants in 2007
and 2008, and induced defendant to produce patented varieties of
roses for the 2007 and 2008 order.  On July 31, 2006, plaintiff
sent a letter to defendant cancelling its orders for the 2007 and
2008 crop seasons.

On December 20, 2006, plaintiff filed suit seeking a
declaratory judgment in Oregon state court.  On December 29,
2006, defendant filed suit against plaintiff in an Arizona state
court, alleging breach of contract and breach of implied covenant

of good faith and fair dealing relating to the same subject
matter in the case at bar.  On January 29, 2007, the Arizona
state action was removed to the United States District Court for
the District of Arizona.

## II. <u>STANDARDS</u>

Where, as here, the district court does not hold an
evidentiary hearing on a motion to dismiss, plaintiff "need only
make a prima facie showing of jurisdictional facts in order to
withstand a motion to dismiss." <u>Doe v. Unocal Corp.</u>, 248 F.3d
915, 922 (9th Cir. 2001)(quoting <u>Ballard v. Savage</u>, 65 F.3d 1495,
1498 (9th Cir. 1995)).  If the facts in plaintiff's affidavit are
uncontroverted, the court must take them as true for the purpose
of a motion to dismiss. <u>Id</u>.  If, however, factual conflicts exist
between the parties' affidavits, those conflicts must be resolved
in plaintiff's favor for the purpose of finding a prima facie
case for personal jurisdiction. <u>Id</u>.

Defendant moves to dismiss for lack of personal
jurisdiction. Fed. R. Civ. P. 12(b)(2).  Plaintiff bears the
burden of establishing jurisdiction by a preponderance of the
evidence. <u>Farmers Ins. Ex. v. Portage La Prairie Mut. Ins. Co.</u>,
907 F.2d 911, 912 (9th Cir. 1990).

To establish personal jurisdiction, Plaintiff must satisfy
two prongs: (1) the forum state must have an applicable long-arm
statute that confers personal jurisdiction over the nonresident

defendant; and (2) the exercise of jurisdiction must comport with federal due process. Gray & Co. v. Firstenberg Machinery Co., Inc., 913 F.2d 758, 760 (9th Cir. 1990).

In diversity actions, the federal courts first examine the state's jurisdictional statute to determine if it provides for jurisdiction. Sinatra v. National Enquirer, 854 F.2d 1191, 1195 (9th Cir. 1988). The Oregon long-arm statute provides that jurisdiction may be exercised over nonresident defendants to "the extent permitted by due process." See Or.R.Civ.P. 4L; Id. at 760. Since Oregon's jurisdictional statute is coextensive with federal due process requirements, the jurisdictional requirements under state law and federal law merge into one analysis. FDIC v. British-American Ins. Co., 828 F.2d 1439, 1441 (9th Cir. 1987).

Due Process prohibits the exercise of jurisdiction over nonresident defendants unless those defendants have "minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

A court may find general or specific jurisdiction over a defendant. Here, plaintiff alleges both general and specific jurisdiction over defendant.

General jurisdiction exists where a defendant is domiciled in the forum state or his or her activities are "substantial" or

"continuous and systematic." <u>Helicopteros Nacionales de Columbia,</u>
<u>S.A. v. Hall</u>, 466 U.S. 408, 414-16 (1984).  Where a state
exercises personal jurisdiction over a defendant in a suit not
arising out of or related to the defendant's contacts with the
forum, the state exercises general jurisdiction over defendant.
<u>Id</u>. at 415, n. 9.

        To determine whether there is specific jurisdiction, the
Ninth Circuit has articulated a three-part test:

> (1) The nonresident defendant must do some act or consummate
> some transaction with the forum or perform some act by which
> he purposefully avails himself of the privilege of
> conducting activities in the forum, thereby invoking the
> benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or results
> from the defendant's forum-related activities; and
>
> (3) exercise of jurisdiction must be reasonable.

<u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476-77 (1985).
All three prongs of the minimum contacts test must be satisfied
to establish specific personal jurisdiction. <u>McGlinchy v. Shell</u>
<u>Chem. Co.</u>, 845 F.2d 802, 817-18 n. 10 (9th Cir. 1988).  If
plaintiff succeeds in satisfying both of the first two prongs,
the burden shifts to the defendant to "present a compelling case"
that the exercise of jurisdiction would not be reasonable. <u>Burger</u>
<u>King</u>, 471 U.S. at 476-78.
///
///

Page 6 - OPINION AND ORDER

III. <u>DISCUSSION</u>

A. GENERAL JURISDICTION

Plaintiff first alleges that the court has general jurisdiction over defendant. I disagree. In <u>Helicopteros</u>, the court declined to extend general jurisdiction over a Colombian corporation, where it neither had a place of business nor had been licensed to do business in Texas, and its contact to the forum state was limited to one trip to Houston by the chief executive officer for the purpose of negotiating the contract, accepting into its bank account checks drawn on a Houston bank, purchasing equipment from a Texas firm, and sending personnel to Texas for training. 466 U.S. at 416. Similarly, the court has declined to exercise general jurisdiction where a South Carolina corporation's contacts with Oregon were "sporadic" and limited to the sale of one compact disc to a forum resident and the maintenance of an Internet Web site. <u>Millennium Enterprises, Inc. v. Millennium Music, LP</u>, 33 F.Supp.2d 907, 910 (D.Or. 1999).

Here, defendant's principal place of business is in Phoenix, Arizona. Defendant does not have an office in Oregon, has never sent an agent to Oregon in connection with the contracts at question, and with the exception of its contracts with plaintiff, does not advertise or sell its products to any person or entity in Oregon. Defendant's only proven contact with Oregon was through its contractual relationship with plaintiff. In sum,

Page 7 - OPINION AND ORDER

defendant's contacts with Oregon do not rise to the level of "continuous and systematic" and are, therefore, insufficient to warrant an exercise of general jurisdiction.  For these reasons, the court declines to exercise general discretion over defendant in this case.

B.  SPECIFIC JURISDICTION

1. PURPOSEFUL AVAILMENT

Under the first prong of the three-part specific jurisdiction test, plaintiff must establish that defendant purposefully availed itself of the privilege of conducting activities in Oregon. <u>Sinatra</u>, 854 F.2d at 1195.  This requires that "the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." <u>Id</u>.  Moreover, in order to find purposeful availment, it is not required that a defendant be physically present in the forum provided its efforts are purposefully directed toward forum residents. <u>Millennium Enterprises, Inc.</u>, 33 F.Supp.2d at 910-11.

When applying the purposeful availment prong to a set of facts, the Ninth Circuit has distinguished between tort and contract cases. <u>See</u> <u>e.g.</u>, <u>Schwarzenegger v. Fred Martin Moto Co.</u>, 374 F.3d 797, 802 (9th Cir. 2004); <u>Burger King</u>, 471 U.S. at 478. The court has employed a "realistic approach" and noted that the existence of a contract with a resident of the forum state is

itself insufficient to satisfy the purposeful availment
requirement. <u>Burger King</u>, 471 U.S. at 478-79.  Rather, it
requires more. <u>Id</u>.  More precisely, that court stated:

> [W]ith respect to interstate contractual obligations, we
> have emphasized that parties who 'reach out beyond one state
> and create continuing relationships and obligations with
> citizens of another state' are subject to regulation and
> sanctions in the other State for the consequences of their
> activities.

<u>Id</u>. at 473 (quoting <u>Travelers Health Ass'n v. Virginia</u>, 339 U.S.
643, 647 (1950)).  "[P]rior negotiations and contemplated future
consequences, along with the terms of the contract and the
parties' actual course of dealing" are among the factors to be
considered. <u>Id</u>. at 479.

Specifically, in <u>Naumes, Inc. v. Alimentos Del Caribe</u>, 77
F.Supp.2d 1158, 1163 (D.Or. 1999), the court considered a breach
of contract dispute between an Oregon seller of pears and a
Colombian buyer.  There, the Colombian buyer placed three orders
for the shipment of pears from Oregon. <u>Id</u>. at 1161.  Apart from
two shipments, the Colombian corporation had neither done
business in Oregon, advertised, nor had agents in Oregon. <u>Id</u>.
Further, although subsequent negotiations took place between the
parties by telephone and facsimile transmissions, none of the
Colombian corporation's employees had ever been to Oregon. <u>Id</u>.
The court found that the plaintiff failed to make a prima facie
showing that defendant had purposefully availed itself of the
privilege of conducting business in the forum state. <u>Id</u>. at 1163.

In so holding, the court identified relevant guidelines to determine whether "a defendant involved in a breach of contract for the sale of goods has purposefully availed itself of the forum's laws so as to justify the exercise of specific personal jurisdiction over the defendant." Id. These factors include:

(1) Who initiated the contact?

(2) What where the goods' origination and destination?

(3) What is the value of the goods involved in the disputed transaction?

(4) How many contacts did defendant have with the forum?

(5) Where did contract negotiation take place?

(6) Are there prior dealings or future consequences anticipated between [the] parties that relate to the contract in dispute?

Naumes, 77 F.Supp.2d at 1163.

Here, it is undisputed that defendant engaged in contractual relations with plaintiff for the sale of rose plants. Other than the contracts in question, however, no physical ties to Oregon can be attributed to the defendant. Specifically, the roses originated in Arizona, where they were grown by defendant. Plaintiff initiated contact with defendant and solicited defendant's business in its forum state. The roses were harvested and paid for in Arizona. Also, defendant did not advertise or market in Oregon, and despite plaintiff's cursory remark to the contrary, defendant alleges it did not sell

Page 10 - OPINION AND ORDER

products to any person or entity in Oregon.  Defendant did not
maintain an office in Oregon, and defendant's agents did not
visit Oregon in connection with the contracts.  In short,
defendant's only contact with Oregon was its contracts with
plaintiff.

This action may be distinguished from Naumes, however,
insofar as defendant here has engaged in affirmative conduct to
promote the transaction of business within the forum state.
After its initial contract with defendant in 2001, defendant
engaged in correspondence with plaintiff via telephone, fax, and
mail and initiated systematic solicitations from plaintiff.
Plaintiff cites to defendant's routine practice, which included
sending a spring bud count every May to plaintiff to assist
plaintiff in placing the following year's order.  Specifically,
plaintiff notes that defendant initiated contact by mailing and
faxing bud counts to plaintiff on May 28, 2003, May 17, 2004,
August 13, 2004, May 11, 2005, February 17, 2006, and May 11,
2006.  In addition to these communications, defendant regularly
sent plaintiff shipping manifests.[1]  Defendant also sent a letter
to plaintiff, announcing its new address and on one occasion,
defendant faxed plaintiff a hand-drawn map to its location, which
provided driving directions.  Further, defendant's President and

---

[1] By way of further illustration, in 2004 alone, defendant sent plaintiff a shipping manifest
on February 20, 2004, February 27, 2004, March 2, 2004, March 9, 2004, March 12, 2004, and
March 16, 2004.

CEO contacted plaintiff personally by fax and telephone on
February 14, 2006, with a list of available varieties.  Finally,
defendant regularly contacted plaintiff via telephone to either
orally solicit an order from plaintiff or to clarify an existing
order.  Many of these communications were memorialized by
plaintiff's internal staff e-mails, handwritten notes to
plaintiff's files, or by letter to defendant.

In addition, unlike <u>Naumes</u>, the parties in this action
engaged in successive years of contractual obligations dating
back to the first contract in 2001, thereby lending support to
the proposition that defendant engaged in continuing obligations
with the forum state.  Specifically, the first contract between
the parties occurred in November 2001, for the purchase and
delivery of rose plants in December 2003, and January 2004.
Plaintiff again purchased roses from defendant in 2005.
Plaintiff notified defendant on or about January 31, 2006, that
it would purchase 100,000 rose plants in 2006.  Finally, the
action at bar involves contracts for the purchase of rose plants
in 2007 and 2008.

Examining the parties' course of dealing as a whole,
including their contractual obligations dating back to November
2001, I conclude that, although defendant did not maintain a
physical presence in Oregon, it engaged in affirmative conduct to
solicit plaintiff's business and thus, purposefully availed

itself of conducting business in the forum state.  As stated in
Burger King, defendant, here, "reach[ed] out beyond one state and
create[d] continuing relationships and obligations with citizens
of another state[.]" Id. at 473 (internal quotation omitted).

2.    DEFENDANT'S FORUM RELATED ACTIVITIES

The Ninth Circuit employs a "but for" test of causation to
determine the second prong of the jurisdictional test. Meyers v.
Bennett Law Offices, 238 F.3d 1068, 1075 (9th Cir. 2001).  This
relatedness requirement is met if the cause of action would not
have arisen "but for" the alleged contacts between defendant and
forum state.

Plaintiff's claims against defendant arise out of
plaintiff's alleged breach of two contracts to purchase patented
rose plants from defendant in 2007 and 2008.  Because the two
contracts constitute defendant's contacts with Oregon, this
element of the specific jurisdiction test is satisfied. See
Haisten, 784 F.2d at 1400.

3.    REASONABLENESS

The third prong of the Ninth Circuit's test requires a
finding that the court's assertion of jurisdiction is reasonable.
Because defendant has purposefully directed its activities to
Oregon, I find that personal jurisdiction over defendant is
reasonable.  Sher v. Johnson, 911 F.2d 1357, 1364 (9th Cir.
1990).  The burden is on defendant to "present a compelling case

that the presence of some other considerations would render jurisdiction unreasonable." Id.

The test for ascertaining the reasonableness of subjecting the defendant to jurisdiction is not mechanical. Insurance Company of North America v. Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir. 1981).   In addressing the factor of reasonableness, the court considers seven factors: (1) the extent of the defendant's purposeful injection; (2) the burden on the defendant in defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. Burger King, 471 U.S. at 476-77.  Considering these factors together, the court must determine whether defendant demonstrated that jurisdiction in Oregon would be so unreasonable as to violate due process.

The court notes that most of these factors do not weigh strongly in favor of either side.  The most notable factor is the first.  As noted in the purposeful availment analysis, defendant's contacts with Oregon were sufficient to constitute purposeful availment.  Defendant's actions in continuing to solicit plaintiff's business following plaintiff's 2001 order

Page 14 - OPINION AND ORDER

constituted activity directed at the forum state.  Furthermore, the parties had engaged in contracts for successive years, dating back to plaintiff's first order from defendant in 2001.

Beyond the impact of the first factor, the court notes that the hardship on both parties to defend outside of their forum is comparable; neither forum provides any marked efficiency over the alternative; any sovereignty conflicts are best resolved through choice-of-law, rather than jurisdictional rules; both Arizona and Oregon have adopted the U.C.C.; and alternative forums are within the United States.

Defendant fails to met its burden of presenting a compelling reason that jurisdiction would be unreasonable.  The court therefore finds that the exercise of jurisdiction over defendant is reasonable.[2]

C.  MOTION TO TRANSFER

After finding that this court has specific jurisdiction over defendant, the court now considers defendant's alternative motion to transfer pursuant to 28 U.S.C. § 1406(a).  That motion is also denied.

District courts generally have a "virtually unflagging obligation" to exercise the jurisdiction given them, and "only the clearest of justifications will warrant dismissal." Colorado

---

[2] Moreover, the court finds venue in Oregon proper pursuant to 28 U.S.C. section 1391(c).

River Water Conservation District v. United States, 424 U.S. 800, 817, 819 (1976).  The Colorado River test, however, does not apply where the Declaratory Judgments Act is involved. Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1366 (9th Cir. 1991).

Pursuant to a generally recognized doctrine of federal comity, where two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit. Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982).  The "first to file" rule has three prerequisites: chronology, identical parties, and identical issues. Alltrade, Inc. v. Uniweld Prods, Inc., 946 F.2d 622 625 (9th Cir. 1991).

The "first to file" rule is not, however, a rigid or inflexible rule that is mechanically applied. Pacesetter Systems, Inc., 678 F.2d at 95.  Rather, an exercise of the rule requires "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation[.]"  Id. (quoting Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183-84 (1952)).  Further, even if the three prerequisites are met, the application of the rule is discretionary, and the court may examine factors of forum convenience. Alltrade Inc., 946 F.2d at 625.

Here, the three prerequisites are met.  Plaintiff filed suit

first on December 20, 2006, in Washington County Circuit Court and served defendant on December 26, 2006. Defendant filed its lawsuit in Maricopa County Superior Court on December 29, 2006, but did not serve plaintiff until January 22, 2007. Plaintiff's action was filed, served and pending prior to defendant filing any lawsuit. The second and third prerequisites are met as well because the parties and issues are identical in both lawsuits - the alleged contract for the purchase and sale of roses.

To allow both suits, then, to go forward at this point is inefficient and a waste of judicial resources, resulting in potentially duplicitous and piecemeal litigation.

The "first to file rule" applies, unless the court finds reasons why it should not. Other factors to be considered include the convenience for the parties and witnesses. I find these factors are neutral. There is no greater inconvenience for defendant to litigate the case in Oregon than exists for plaintiff to litigate the case in Arizona. The anticipated witnesses are expected to be employees of one company or the other. I find no equitable reasons to suspend the first to file rule in this case.

Therefore, the court declines to exercise its discretion to transfer this action to the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1406(a). Defendant's alternative motion to transfer is denied.

///

## CONCLUSION

For the aforementioned reasons, I find that defendant's contacts with Oregon are sufficient to warrant the application of specific jurisdiction. Therefore, defendant's motion to dismiss (doc. 4), as well as alternative motion to transfer (doc. 4) are denied.

IT IS SO ORDERED.

Dated this *15* day of March 2007.


_____
Ann Aiken
United States District Judge


Page 18 - OPINION AND ORDER